Kemp S. Dargan v. Commissioner.
Kemp v. Commissioner
Docket No. 10317.
United States Tax Court
1947 Tax Ct. Memo LEXIS 72; 6 T.C.M. (CCH) 1078; T.C.M. (RIA) 47279; October 6, 1947
*72 Harry R. Jones, Esq., 22nd Floor, Gulf Bldg., Houston, Tex., and Milton H. West, Jr., Esq., 22nd Floor, Gulf Bldg., Houston, Tex., for the petitioner. Stanley B. Anderson, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $16,126.11 in petitioner's income and victory tax for the calendar year 1943; because of the provisions of the Current Tax Payment Act of 1943, petitioner's income for the calendar year 1942 is in controversy. The only issue here involved is the determination of what amount of petitioner's 1942 income constituted his separate income and what portion constituted the community income of himself and his second wife, Sarah Cockrell Dargan, to whom he was married on June 20, 1942. Petitioner filed his income tax returns for 1942 and 1943 with the collector of internal revenue for the first district of Texas. Findings of Fact This proceeding was submitted upon a stipulation with certain exhibits attached, which we adopt as our findings of fact, and from which it appears: Petitioner is and has for many years been domiciled in Texas, residing in Houston. He was *73 married to Estelle White Dargan in 1908, and with the use of community funds of this marriage petitioner became a partner in the insurance management firms of Cravens, Dargan & Company of Houston, Texas, and Cravens, Dargan & Company of San Francisco, California. Both of these partnerships kept their books and based their accounting periods on the calendar year, and both made and paid large earnings to firm members. On their federal income tax returns petitioner and wife, Estelle White Dargan, during her life, consistently treated petitioner's distributive share as a partner in these firms as community income, each reporting onehalf thereof. The value of the undivided one-half community interest of Estelle White Dargan in said partnerships, on September 25, 1941, was $110,000. On September 25, 1941, petitioner's wife, Estelle White Dargan, died. She left a will in which she named petitioner as sole beneficiary and independent executor of her estate. On November 4, 1941, this will was admitted to probate and petitioner duly qualified as independent executor and served as such until December 31, 1942, when the administration was closed. On June 20, 1942, petitioner married Sarah *74 Cockrell Dargan, his present wife. A statement of the total taxable income and allowable deductions for the year 1942, segregated in part as to income received and deductions paid for the period prior to and subsequent to June 20, 1942, is contained in paragraph 15 of the stipulation, as follows: "15. The following schedule sets out, for the year 1942, segregated as to receipts and disbursements before and after June 20, 1942, all of the income and deduction items pertinent to the tax liability of Petitioner, the Estate of Estelle White Dargan, and Sarah Cockrell Dargan: Prior to June
After June
Total for
Income:
20, 1942
20, 1942
the year
Total income from Cravens, Dargan & Company
$81,394.30
Dividends Received
$983.52
$1,269.73
2,253.25
Interest Received
454.60
424.51
879.11
Capital Gain Received
12.81
12.81
Salary and Directors' Fees Received
625.00
895.00
1,520.00
$86,059.47
Deductions: Interest Paid
$670.72
$ 15.50
686.22
Taxes Paid
330.74
676.87
1,007.61
Contributions
262.50
134.50
397.00
Other Deductions
223.61
276.68
500.29
$ 2,591.12"
The $81,394.30 listed above as total income from *75 the two insurance partnerships was taxable income of petitioner, his second wife, Sarah Cockrell Dargan, and the estate of Estelle White Dargan, deceased. The withdrawals in that year from the partnerships, prior to June 20, 1942, total $17,165.68. The remainder of the share of the partnership income for 1942 was paid by such partnerships to petitioner and the estate of Estelle White Dargan after June 20, 1942. It is conceded by petitioner in his brief that in the year 1942 he received, prior to June 20, 1942, the sum of $15,897.82. We quote the first paragraph on page 11 of petitioner's brief: "In addition to the dividends, interest, salary and Director's fees, and cash distributions from the Estate, all of which total $5,647.81, and all of which were received by Petitioner prior to June 20, 1942, Petitioner also received and retained prior to that date $10,250.01 of the partnership withdrawals. The two figures total $15,897.82." Respondent in his brief corroborates the correctness of these figures. We quote from the last paragraph of respondent's brief, contained on page 10: "* * * In the event respondent's contention is denied, it is submitted that the amounts of $10,250.01, *76 $458.01 and $227.30, deposited to petitioner's individual account prior to June 20, 1942, and the distributions of $4,337.50 made by the estate to petitioner prior to June 20, 1942, constitute separate income of the petitioner." The figures quoted in the above paragraph from respondent's brief aggregate $15,272.80, and when to this is added $625 for "salary and director's fees" (evidently overlooked by respondent) it makes the total sum received by petitioner in 1942 prior to June 20, 1942, $15,897.82, the identical amount claimed by petitioner. When Estelle White Dargan died, the community debts of herself and petitioner then outstanding totaled $13,003.08, plus her income taxes for 1940 and 1941, also the liability of her estate for state and federal inheritance and estate taxes. On June 20, 1942, the only unpaid community indebtedness was $250 due Strauss-Frank Co. and $3,184.79, her federal income taxes for 1941. We find that of the total income of petitioner for the calendar year 1942 the sum of $15,897.82 was acquired by him prior to June 20, 1942, and is his separate income taxable to him alone, and that all of the remainder of his income for that year was acquired by *77 him after June 20, 1942, and is community income, taxable one-half to him and one-half to his wife, Sarah Cockrell Dargan, and that all of such remainder was either income from his separate estate or personal earnings made by him after June 20, 1942. Opinion In discussing the sole issue as to what part of petitioner's 1942 income was his separate income and what portion was community income of himself and his second wife, Sarah Cockrell Dargan, petitioner and respondent in their briefs each assert two separate and distinct grounds in support of their respective positions. On their primary or first position they differ widely, but on their alternative position they are in complete agreement, both as to the amount of income received by petitioner prior to June 20, 1942, and that same was his separate income, taxable to him alone, and inferentially, if not expressly, that the remainder of his income for that year was community, and only one-half taxable to him. While we agree with the conclusion reached in the alternative pleas of the parties, we will now consider the petitioner's and respondent's first contention, which directly conflicts with the position assumed by them in *78 their alternative pleas. Petitioner's first contention is that all of his gross income of $86,059.47 for 1942, except $2,063.12, which latter sum included certain items of dividends, interest, salary, director's fees, etc., paid him prior to June 20, 1942, was the community property of petitioner and his second wife, Sarah Cockrell Dargan. He bases this contention upon the untenable ground that since the major portion of such income was from the two partnerships whose taxable years ended on December 31, 1942, that until that date it was not ascertainable what the partnership incomes for the year would be, and hence December 31, 1942, was controlling in determining whether the income was separate or community property, and since he had a marital status on December 31, 1942, all income for the entire year would be community. In support of this view he quotes the following sentence from the Supreme Court's opinion in : "Since a partner is entitled to profits only upon a partnership accounting at the end of the accounting period, his profits become subject to income tax as and when they are thus ascertained." This isolated *79 sentence when read with its context and in connection with the issue there involved is not susceptible of the construction placed upon it by petitioner. The question there involved was whether a deceased partner's taxable income for the calendar year 1933 includes his share of partnership profits from the beginning of the partnership fiscal year on August 1, 1933, to the date of his death in the same year (December 16, 1933), in addition to his share of the partnership profits for its fiscal year ending July 31, and the Court held that it did. Neither the facts of the Guaranty Trust Company case, supra, nor the opinion of the Supreme Court therein, upholds petitioner's contention here made. On the contrary that opinion affirmatively holds that when the income is accrued or received determines its taxability. In the second sentence preceding the one quoted from the opinion by respondent, Mr. Justice Stone declares "Receipt of income or accrual of the right to receive it within the tax year is the test of taxability." [Italics ours.] The marital status of petitioner at the time the income was accrued or received determines whether such income is separate or community, and therefore *80 June 20, 1942, the date of his second marriage, rather than December 31, 1942, the end of the taxable year of his business partnerships, is determinative of the issue here involved. Respondent's first ground of contention, based on the Commissioner's determination, is that $60,323.09 (rather than $15,897.82 claimed in respondent's alternative plea) of petitioner's 1942 income is taxable against him and the remainder to the community of his second marriage. He reaches this figure by assuming (we say assume, because there is no evidence to support it) that the income distribution to petitioner as sole beneficiary of his deceased wife "accrued ratably throughout the year 1942" and accordingly he divides the year into two fractions: (1) 17/36 representing that portion of the year 1942 prior to June 20, while he was unmarried, and (2) 19/36 representing the remainder of the year after June 20, while he was married, and he uses these fractions in determining what portion of the year's income was received before June 20, and what amount subsequent thereto. Under the facts of this case that method of computation is erroneous. If such income for 1942 had accrued or been paid in equal amounts *81 each month, such computation would have been justified, but the record shows that such was not the case. The evidence discloses that petitioner's income from January 1 to June 20, 1942, was the sum of $15,897.82, which consisted of his share of the insurance partnerships' earnings during that period, plus dividends, interest, salary and director's fees also earned and received during that period, and that all the remainder of his income for 1942 was earned and acquired by him after June 20, 1942. Neither do we think there is merit in respondent's contention that the "payments accrued ratably throughout the years", because, as he says, "the origin and inception of the right to the distributable income of the estate accrued while petitioner was unmarried and that the ripening of the right must be held to relate back to its incipiency." The doctrine of the so-called "inception of right" theory obtains in Texas, but the facts in this case do not warrant its applicability. Here, unlike the cases cited by respondent, it is not questioned that all of the property petitioner acquired from his deceased wife became and remained his separate property, and no part of it belonged to the community *82 estate of his second marriage. Under the will all property belonging to his first wife at the time of her death became petitioner's separate property. The only interest that the community estate of petitioner and his second wife had therein was that all income accrued and received therefrom after June 20, 1942, was not his separate income, but the community income of petitioner and wife, Sarah Cockrell Dargan. The law of Texas differs somewhat from the law of some other community property states. In Texas there is a distinction between the character of the ownership of property and that of income derived therefrom. The separate property of either husband or wife, after marriage, continues to be the separate property of each, but all income derived therefrom is the community income of the husband and wife. ; , aff'd (C.C.A. 5th Cir.), ; , aff'd ; . Furthermore, all income acquired by either the husband or wife during *83 marriage is presumed under Texas law to be community income and in order to rebut this presumption there must be evidence that it was not. , affirming ; . There is no evidence that any part of the income petitioner received in 1942 from his deceased wife's estate was either property theretofore belonging to her or proceeds from the sale thereof. If the insurance partnerships had been liquidated or if the undivided interest or any part thereof theretofore belonging to his deceased wife had been sold, then the proceeds from the sale would have been petitioner's separate property. The stipulations affirmatively show that all distributions acquired by petitioner in 1942 from his deceased wife's estate was "income" therefrom and hence that portion acquired after June 20, 1942, was community income of petitioner and his wife, Sarah Cockrell Dargan. We hold that of petitioner's income for 1942, $15,897.82 is his separate income and taxable to him alone, and that the remainder of his income for that year is community income of petitioner and Sarah Cockrell *84 Dargan and only one-half of same is taxable to him. Decision will be entered under Rule 50.